IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                        Criminal Action No.: 5:15–CR–69
                                                            (JUDGE STAMP)

CASEY T. NAGY,

    Defendant.

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On December 1, 2015, Casey Tyler Nagy ("Defendant" or "Nagy") was named in a two-count Indictment alleging distribution of LSD in Count One and "Felon in Possession of a Firearm" in Count Two. ECF No. 1. Because Nagy was already in the custody of the State of West Virginia, and upon Petition by the United States ("Government"), the undersigned issued an Order Granting the Government's Motion for Writ of Habeas Corpus *ad prosequendum* on December 7, 2015. ECF Nos. 7 & 8. On December 9, 2015, the Court appointed Robert G. McCoid as counsel for Defendant in this matter. ECF No. 10. On December 28, 2015, Mr. McCoid filed a Motion to Suppress on Nagy's behalf. ECF No. 17. Accordingly, on January 15, 2016, the undersigned held a hearing on the Defendant's Motion.

At the suppression hearing, the Government appeared by David J. Perri, Esq., and the Defendant appeared in person, and by counsel, Mr. McCoid. ECF No. 21. Furthermore, Defendant called Detective Donald W. Harris ("Det. Harris") as a witness at the hearing. ECF No. 22. Det. Harris was the only witness who testified at the hearing. *Id.*

Upon consideration of the filings, testimony, evidence, and exhibits submitted by both parties, this Court is now prepared to provide the District Court with its Report and

Recommendation regarding Defendant's Motion to Suppress Evidence and Statements.

## II. DISCUSSION

**A. LEGAL STANDARDS**

The Fourth Amendment to the United States' Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

"Search warrants must be supported by probable cause to satisfy the dictates of the Fourth Amendment." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based." *United States v. Ventresca*, 380 U.S. 102, 108–09 (1965) (citing *Aguilar v. State of Texas*, 378 U.S. 108 (1964)). "Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." *Id.* at 109.

"However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* The Supreme Court of the United States also noted that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (citing *Jones v. United States*, 362 U.S. 257, 270 (1960)).

In reviewing whether probable cause existed for a search warrant that has already been issued, courts are to give "'great deference' to the magistrate's assessment of the facts presented to him." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990) (quoting *Spinelli v. United States*, 393 U.S. 410 (1969)). In reaffirming the "totality-of-the-circumstances" analysis traditionally used to determine whether probable cause exists, the Supreme Court explained reviewing courts' duty: "ensure that the magistrate had a 'substantial basis for . . . concludin[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *Jones*, 362 U.S. at 271).

Moreover, "the task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). "When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." *Wilhelm*, 80 F.3d at 118.

In 1984, the Supreme Court adopted a good-faith exception to the exclusionary rule under the Fourth Amendment. See *United States v. Leon*, 468 U.S. 897 (1984). The Supreme Court has repeatedly held that the exclusionary rule's sole purpose "is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419, 2426 (2011). Significant to this

3

Court's inquiry, there are four situations where the good faith exception is inapplicable. *Id.* The first situation concerns affidavits containing knowing or reckless falsity, which is not applicable in this matter. *See Leon*, 468 U.S. at 914. The three remaining situations may be applicable to this case: "when the magistrate has simply acted as a rubber stamp for the police; . . . when the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause; . . . and finally, when the warrant is so facially deficient that an officer could not reasonably rely on it." *Wilhelm*, 80 F.3d at 121 (internal quotations omitted) (citing *Leon*, 468 U.S. 897).

The good faith exception to the exclusionary rule does not apply when the search warrant at issue is supported by a "bare bones" affidavit. *See, e.g.*, *Wilhelm*, 80 F.3d 116; *United States v. Laury*, 985 F.2d 1293, 1311 n.23 (5th Cir. 1993) (explaining that a "bare bones" affidavit is one containing "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause"). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239.

To be clear, "once we determine that the affidavit is a bare bones affidavit, we can conclude the good faith exception is not met . . . ." *United States v. Underwood*, 725 F.3d 1076, 1087 (9th Cir. 2013) (citing *United States v. Luong*, 470 F.3d 898, 905 (9th Cir. 2006)). "[A]ffidavits supported only by conclusory statements are 'bare bones' affidavits insufficient to trigger the *Leon* good faith exception." *United States v. Lionel McCoy*, No. RDB–06–0449, 2007 WL 6846832, at *2 (D. Md. Oct. 24, 2007). "An affidavit is bare bones when it contains only suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Wilhere*, 89 F. Supp. 3d 915 (E.D. Ky. 2015) (internal quotations

4

omitted) (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)).

Regarding how the information shall be presented to the issuing magistrate, the Fourth Circuit has held that "[t]he Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided the issuing magistrate be supported by Oath or affirmation." *United States v. Clyburn*, 24 F.3d 613, 617 (1994) (internal quotations omitted). Accordingly, "magistrates may consider sworn, unrecorded oral testimony in making probable cause determinations during warrant proceedings. *Id.* (citing *United States v. Hill*, 500 F.2d 315, 321 (5th Cir. 1974); *United States ex rel. Gaugler v. Brierley*, 477 F. 2d 516, 522 (3d Cir. 1973); *Frazier v. Roberts*, 441 F.2d 1224, 1226 (8th Cir. 1971)).

**B. SUPPRESSION HEARING TESTIMONY**

At the suppression hearing held on January 15, 2016, Defendant called his only witness, Detective Donald W. Harris ("Det. Harris"), of the New Martinsville Police Department. ECF No. 22. Det. Harris testified that he had information that some sales were occurring out of a local hotel room, and he made use of a confidential informant ("CI") to investigate further. ECF No. 23 at 4. Det. Harris testified that his CI "went to the room and made a buy of acid, or LSD." *Id.* Mr. McCoid asked Det. Harris questions to clarify exactly what he meant by that, and Det. Harris explained that the CI bought "strips that had the LSD already on it." *Id.* at 4–5. The CI was wearing a camera, and Det. Harris stated that he was able to watch the entire interaction from his laptop computer. *Id.* at 5; 14. Det. Harris testified that he actually watched the video transmitted by the CI while the CI was in the hotel room. *Id.* at 15. Moreover, Det. Harris stated that the CI "actually said on the video to the – when he was making the buy, 'I am purchasing acid, is that correct?'" *Id.* at 13.

During Mr. McCoid's examination of Det. Harris, the Detective testified that he did not field

test the "strip of paper" the CI purchased; he "did not have any affirmative evidence to substantiate that what was purchased by the [CI] was actually a controlled substance"; he made a typo by referring to what was purchased by the CI as "a strip off acid"; he is aware that there is "no description of what acid is in terms of the Uniform Controlled Substances Act"; he included no information in the affidavit about the identity of the CI and no representation was made regarding the CI's reliability or history of producing reliable information; he provided the issuing magistrate with no information outside what is contained in the affidavit; he did not show the issuing magistrate the video recording; and he was able to obtain evidence as a result of this initial search warrant that led to his securing a subsequent search warrant for Defendant's vehicle. *See* ECF No. 23. Furthermore, Det. Harris testified that Mr. McCoid was correct in saying that "the indictment was procured and there was no evidence that there was actually a crime that had been committed yet as far as the delivery of a controlled substance goes[.]" *Id.* at 12.

Det. Harris also testified that, at the time of the hearing, the second page–containing his affidavit–was missing from the search warrant entered into evidence as an exhibit at the hearing. *See Id.* at 30–33. Mr. McCoid told the Court he was "surprised there wasn't a page 2 supplied with discovery in the first place." *Id.* at 33. The Court directed the Government to attempt to obtain the missing second page, Det. Harris's affidavit, in the next three days. *Id.* at 38.

**C. THE MISSING SECOND PAGE – THE AFFIDAVIT**

Shortly after the hearing, the Government provided Defendant and the Court with copies of Det. Harris's affidavit. This page is titled affidavit and complaint for search warrant. the document appears to be a form that is often used by state law enforcement agencies in West Virginia and signed by West Virginia magistrates. The entirety of that document is reproduced below:

6

**AFFIDAVIT AND COMPLAINT FOR SEARCH WARRANT**

STATE OF WEST VIRGINIA,

COUNTY OF  Wetzel , TO-WIT:

This day personally appeared before the undersigned, a Magistrate for said County, Detective Donald W. Harris, who after being first duly sworn, upon his oath says:
That on the  25  day of  June , 202015,
and prior to making of this Complaint, in the said County of   Wetzel , Casey T. Nagy did unlawfully *(and feloniously) Deliver of Schedule I controlled substance ACID.
Its unlawful for any person to manufacture, deliver, or possess with intent to manufacture, deliver, or possess with the intent to deliver to manufacture or deliver, a controlled substance. A violation of WV CODE 60A-4-401(a)

and that the affiant has cause to believe and does believe that property,
*a) (Stolen) (Embezzled) (Obtained by false pretenses)
*b) (Designed and intended for use) (which is and has been used) as a means of committing such criminal offense
*c) (Manufactured ) (sold) (kept) (concealed) (possessed) (controlled) (designed and intended for use) (which is and has been used) in violation of the criminal laws of the state
*d) (Evidence of a crime)
Namely, Acid, Crack or other illegal controlled substance, records of illegal drug use, paraphernalia,
(State property to be seized)
computers, cell phones, money, containers used for holding durgs or money, any evidence of drug transactions, use or sales.

is concealed in Budget Inn a brick building located at 834 North State Route 2 New Martinsville, WV
(Describe premises)
Room 262 Rented by defendant.

and that the facts for such belief are based on video and audio recording of CI 1011 of the persons in the room selling a strip off acid to the
(State facts for belief)
CI. The defendant did sell the strip of acid to him at the room. *This happen on 6-25-15 at Room 262*[1]

---

[1] The italicized portion was handwritten.

[*Donald Harris's signature*]² 
<u>Detective Donald W. Harris</u>
Complainant
(Type name on the line; have Complainant sign above typed name)

Taken, subscribed and sworn to before me this the <s>26</s>25th day of <u>June</u>, 20<u>15</u>

Strike out inapplicable words.    [*Magistrate Judge's signature*]³
                                    Magistrate

NOTE: W.Va. Code § 62-1A-4 provides specifically that a warrant may be executed and returned only within 10 days after its date.

SCA-M28

## IV. ANALYSIS

After reviewing Det. Harris's testimony, the affidavit he submitted to the issuing magistrate, and the extensive body of case law on the issues, the Court is left to conclude that there was no probable cause to support the search warrant when it was issued, and because the affidavit at issue is a bare bones affidavit, the good faith exception does not apply.

As noted above, there are numerous cases where courts across the country have simply found affidavits so lacking that probable cause could not be found. *See, e.g.*, *Wilhelm*, 80 F.3d 116 (4th Cir. 1996); *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006); *Underwood*, 725 F.3d 1076 (9th Cir. 2013); *United States v. Fields*, 182 F. Supp. 2d 575 (E.D. Tex. 2002); *Lionel McCoy*, No. RDB–06–0449, 2007 WL 6846832 (D. Md. Oct. 24, 2007); *Wilhere*, 89 F. Supp. 3d 915 (E.D. Ky. 2015).

Det. Harris testified that the issuing magistrate did not watch the video of the CI's interaction in the hotel room. *Id.* at 10–11. No information regarding the CI or his reliability was provided to the issuing magistrate. *Id.* at 10. Det. Harris testified that the issuing magistrate was only provided

---

² Detective Harris signature is located here.

³ The issuing Magistrate's signature is located here.

8

with the information contained within the affidavit. *Id.* at 10. What *is* provided in the affidavit are conclusory statements, suspicions, and beliefs.

The affidavit refers to delivery of a "Schedule I controlled substance ACID"; however, as Det. Harris testified, "acid" is not listed as a Schedule I controlled substance. *See* 21 U.S.C. § 812. Even more troubling, whatever the CI allegedly bought from Defendant was never field tested. *See* ECF No. 23 at 7. Det. Harris admitted during his testimony that he "did not have any affirmative evidence that what was purchased by the informant was actually a controlled substance." *Id.* at 6. The affidavit mentions a belief that "Crack or other illegal controlled substance" will be found at the motel room, but nowhere else in the affidavit or in Det. Harris's testimony is "Crack" or any other illegal controlled substance mentioned or explained.

Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas*, 517 U.S. at 696. This Court, guided by common sense rather than hyper-technicality, finds that the facts and circumstances presented in Det. Harris's affidavit are insufficient to lead a person of reasonable prudence to believe that contraband or evidence of a crime would be found.

Moreover, the Court finds that Det. Harris presented the issuing magistrate with a bare bones affidavit, and as such, this case presents the third situation explained by the *Leon* Court: "the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause." *Leon*, 468 U.S. at 915. Therefore, the good faith exception does not apply, and suppression is an appropriate remedy under the circumstances.

Finally, the Court agrees with Defendant that but for the issuance and execution of the first search warrant, the police would not have secured any statement by Defendant or the subsequent

search warrant for his motor vehicle and the evidence found therein. As such, this Court finds that any and all evidence obtained as a result of both search warrants should be suppressed.

## V. RECOMMENDATION

Based on the foregoing, the undersigned hereby **RECOMMENDS** that [ECF No. 17] Defendant's Motion to Suppress Evidence and Statements should be **GRANTED**. Accordingly, this Court also **RECOMMENDS** that the evidence obtained as a result of the first and second search warrants should be **SUPPRESSED** consistent with Defendant's prayer for relief.

Because trial is imminent, any objections to this Report and Recommendation shall be filed by February 5, 2016.

Dated: January 28, 2016 /s/ *James E. Seibert*
JAMES E. SEIBERT
U.S. MAGISTRATE JUDGE